IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JUAN MUNOZ; S TO N TRANSPORT, LLC; BENITO ALMAGUER; MARIA BALDERAS; JULIO GARCIA; and ANTONIO GUERRERO, Plaintiffs, | § § § § § § § | No. 15-CV-507 |
| v. | § § | DECLARATORY RELIEF SOUGHT |
| CITY OF HIDALGO, TEXAS Defendant. | § § | |

**Plaintiffs' Original Complaint**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs Juan Munoz, S to N Transport, LLC, Benito Almaguer, Maria Balderas, Julio Garcia, and Antonio Guerrero bring this action for declaratory relief, and for damages, and complain as follows:

**Introduction**

1. This case involves a constitutional challenge, brought under the commerce clause (article I, section 8) and the Fourth and Fourteenth Amendments to the United States Constitution, to a City of Hidalgo ordinance requiring certain bus companies to maintain a local office in the City of Hidalgo, meeting certain specifications, as a condition of loading passengers within the City of Hidalgo.

2. Plaintiff Juan Munoz ("Munoz") is an owner/operator of a bus company, Plaintiff S to N Transport, LLC ("S to N Transport"), engaged in the business of transporting hundreds of passengers daily from the Hidalgo-Reynosa International Bridge over state highways to McAllen and back. The rest of the individual plaintiffs are drivers employed by S to N Transport. S to N

1

Transport is in direct competition with a similar company, Sig Transit Services or STS! ("STS!"), owned by City of Hidalgo Councilmember Rodolfo "Rudy" Franz.

3.     On March 18 and 19, 2015, S to N Transport's drivers, including all of the plaintiff drivers here, were cited repeatedly for purported violations of a City of Hidalgo ordinance that, in the main, requires any "transit vehicle" company (such as S to N Transport) to maintain a local office within "walking distance" of the Hidalgo-Reynosa International Bridge and to only load passengers at said office.  The drivers were cited because they had instead serviced passengers from the dedicated bus stop conveniently located at the Bridge itself, rather than at an office away from the Bridge.

4.     The ordinance is invalid because it severely burdens interstate and foreign commerce yet serves no rational governmental purpose.  In fact, the ordinance created such an impediment to the public safety that, after the citations at issue here effectively halted bus service from the Bridge itself, the City of McAllen diverted its own municipal buses to resume service from the Bridge without cost to the riders.

5.     The ordinance is entirely irrational and serves no public purpose.  However, the ordinance does serve to protect STS!, City of Hidalgo Councilmember Franz's transit vehicle company, from competition in the business of transporting passengers traveling in foreign commerce between Mexico and the United States.

6.     Aside from is substantive invalidity, the ordinance does not provide for any enforcement against the drivers as opposed to the "transit vehicle" company itself.  Therefore, the City of Hidalgo had no authority to issue citations to the drivers, and such citations violated the drivers' rights to due process.

7. The ordinance is unconstitutional and unenforceable, yet the City of Hidalgo's citations under the ordinance caused severe economic damage to plaintiffs. Plaintiffs are entitled to a declaration that the ordinance violates their constitutional rights and damages for such violations.

## Parties

8. At all times mentioned in this petition, Plaintiff JUAN MUNOZ was an individual residing in Hidalgo County, Texas and a principal and member of S to N Transport, LLC.

9. Plaintiff S TO N TRANSPORT, LLC is a limited liability company domiciled in Hidalgo County, Texas.

10. Plaintiff BENITO ALMAGUER is, and was at all relevant times, a driver employed with S to N Transport.

11. Plaintiff MARIA BALDERAS is, and was at all relevant times, a driver employed with S to N Transport.

12. Plaintiff JULIO GARCIA is, and was at all relevant times, a driver employed with S to N Transport.

13. Plaintiff ANTONIO GUERRERO is, and was at all relevant times, a driver employed with S to N Transport.

14. Defendant CITY OF HIDALGO is a municipal corporation with a main office at 704 E. Texano, Hidalgo, Hidalgo County, Texas. The City of Hidalgo is a home rule city under Texas law.

## Jurisdiction and Venue

15. This action arises in part under the Constitution and laws of the United States, pursuant to 42 U.S.C. 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367(a).

16. Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983 and by the general legal and equitable powers of this Court. Attorneys' fees are authorized under 42 U.S.C. 1988 and any applicable state law.

17. Venue is proper under 28 U.S.C. § 1391(b) because substantial parts of the events or omission giving rise to Plaintiff's claims occurred in this judicial district.

## Statement of Facts

**Plaintiff S to N Transport, LLC's passenger transportation services in interstate commerce**

18. Plaintiff Munoz ("Munoz") is an owner/operator of Plaintiff S to N Transport, a company engaged in the business of transporting passengers for hire. The vehicles at issue in this litigation have a capacity of 15 passengers (inclusive of the driver).

19. S to N Transport is duly registered with the United States Department of Transportation.

20. S to N Transport is regulated as a "motor carrier" under the Texas Transportation Code. S to N Transport is registered under the Uniform Carrier Registration program recognized by the Texas Department of Motor Vehicles (formerly Texas Department of Transportation) (Certificate 006363833C).

21. S to N Transport holds a Commercial Passenger Vehicle Operations Permit from the City of McAllen.

22. S to N Transport holds a Vehicle for Hire Occupational Business Permit from the City of Hidalgo. S to N Transport finally began operating under such permit in 2013, only after successfully defeating frivolous litigation brought by Franz in state district court in an attempt to prevent S to N from competing with Franz's company, STS!.

23. Previous to 2013, STS! had enjoyed an effective monopoly on the bus transportation at issue here since at least 2001, since STS! was the only company allowed by the City of Hidalgo to operate.

24. Hundreds of individuals traveling from Mexico walk across the Hidalgo-Reynosa International Bridge daily for work, shopping, and other business in the United States. The Hidalgo-Reynosa International Bridge is the only international crossing point in the vicinity with this volume of foot traffic between the United States and Mexico.

25. Individuals who walk across the bridge may proceed to a dedicated bus stand immediately adjacent to the bridge on the United States side. The bus stand is located on the north-bound side of Texas State Highway 281/Highway 115 (also known as International Boulevard), immediately south of the intersection with South Bridge Street. This bus stand is commonly referred to by all parties as the "island."

26. The island is engineered specifically as a bus stand to provide easy and safe ingress and egress of the transit vehicles and loading/unloading of passengers. The vehicles enter the island from Highway 281, and when they leave the island, they pull back onto Highway 281.

27. The island features covered benches and other amenities, such as refuse containers, for the convenience of passengers waiting for a ride.

28. The City of McAllen owns the land on which the island sits.

29. S to N Transport operates eight vehicles in total. All of S to N's buses have a capacity of 15 persons; that is, 14 passengers and a driver.

30. Four of those buses operate a constant daily route, with multiple trips for each bus, between the island at the Hidalgo-Reynosa International Bridge and McAllen. These are the buses at issue in this litigation. These buses load passengers at the island, travel up Highway 281/Highway 115 to Business 83 in McAllen, where they take a right, continue to State Highway 336 (aka 10th St.) and turn south, then turn west on State Highway 1016 (aka W. Military Highway). They turn south again at Highway 115, returning to the island.

**The City of Hidalgo "vehicles for hire" regulations and recent amendments targeting Plaintiffs Juan Munoz and S to N Transport**

31. The City of Hidalgo's code of ordinances section governing "Vehicles for Hire" requires a commercial passenger vehicle company that "*loads* passengers *within the city*" to secure a city permit "before any such vehicle may be operated *for hire* within the city." HIDALGO, TEX. CODE 114-56 (emphasis added).

32. S to N Transport secured its transit vehicle permit in September 2013.

33. S to N makes significant revenue from its operations originating at the island, transporting between 450 and 550 passengers on an average day, seven days a week. This is business that S to N has earned that otherwise would have accrued solely to STS! Transportation when STS! had no competition. Franz's company, STS!, still operates eight buses every day, twice as many as Plaintiff's company.

34. In December 2014, the City of Hidalgo, acting through its City Council, enacted Ordinance No. 2014-13 ("the ordinance"), containing several amendments to Hidalgo's transportation regulations.

35. First, the ordinance amended section 114-57(a)(2) of the code to increase the annual "transit vehicle operation fee" to $750 per company, plus $300 for each vehicle to be operated.[1]

36. Second, the ordinance attempted to amend the definition of "transit vehicle." The ordinance states that "[s]ection 114-143 of the Hidalgo City Code is hereby amended to read as follows:

> (1) Transit vehicle shall mean a chauffeured motor transport vehicle sued as a common carrier, carrying a minimum of eight passengers for a fixed and predetermined fare, transversing the public streets of the city over a fixed and

---

[1] The amendment also states that "no more than 12 vehicles shall be permitted to operate at one given time within the city in aggregate." This conveniently freezes the vehicles in operation at their current number, as Franz's company operates eight, and S to N Transport operates only four.

>predetermined route, loading and unloading passengers en route to a final destination within or outside of the city [sic]

Ordinance No. 2014-13, sec. 3 (underlining added).

37. Curiously, the section amended—section 114-143—is *not* the transit vehicle definition in the City Code. Instead, section 114-143 was a provision requiring taxicabs (separately defined under the Code) to use the most direct route in transporting passengers. Therefore, this amendment effectively repeals this particular taxicab requirement and replaces it with an unrelated definition of "transit vehicle," and yet the preexisting definition of "transit vehicle" remains within the "definitions" section of the Code. *See* HIDALGO, TEX. CODE § 114-31.

38. Third, the ordinance amended section 114-59 (hereinafter the "local office requirement") to read as follows during the time the challenged citations were issued:

>Any company with a transit vehicle permit must also have a place of office within the City limits and located within walking distance from the Hidalgo-McAllen International Bridge. The office must have a minimum of 800 square feet in total and accommodate seating for at least 30 passengers. Such office must be equipped with a land phone line. All loading of passengers must be at the designated office. Fees shall be set within a range of not less than $3.00 and no more than $5.00 per passenger.

HIDALGO, TEX. CODE 114-59 (as amended by Ord. No. 2014-13).[2]

39. The local office requirement imposes several substantive and burdensome requirements, namely that a "company with a transit vehicle permit" maintain (1) "a place of office within the City limits"; (2) "located within walking distance from the Hidalgo-McAllen International Bridge"; (3) with at least 800 square feet of space "accommodat[ing] seating for at least 30 passengers"; (4) a land phone line; and (5) "All loading of passengers must be at the designated office."

---

[2] Section 114-59 was amended again more recently to remove the requirement that "[a]ll loading of passengers must be at the designated office." City of Hidalgo Ord. No. 2015-05 (enacted May 11, 2015). The rest of the ordinance, requiring a local office with all the designated specifications and setting minimum and maximum fares, remains unchanged.

40. The local office requirement does not merely require that a transit vehicle company rent an expensive office space within the city just to provide transportation services, but actually purports to require that such office serve as the only place where the company may load passengers within the City of Hidalgo.

41. By its terms, the local office requirement does not apply to any territory outside of the jurisdiction of the City of Hidalgo. The ordinance applies to "any company with a transit vehicle permit," but such permit is only required for commercial vehicles "that load[] passengers *within the city*." Hidalgo, Tex. Code 114-56. Therefore, by the plain terms of the Vehicles for Hire section of the code of ordinances, one is not required to obtain a City of Hidalgo permit to load passengers in the territory of another municipality, such as the island owned by McAllen.

**Communications with the City of Hidalgo**

42. On February 17, 2015, Munoz, represented by the undersigned attorney, delivered a letter to the City of Hidalgo through certified mail and through Ricardo Perez, the City's attorney, explaining his concerns with the local office requirement. First, Munoz noted that he had come to understand that the City of Hidalgo, at the urging of Franz, intended to interpret the ordinance so as to prevent S to N from loading passengers at the island, even though the ordinance's plain terms do not--and indeed cannot—prevent S to N from loading passengers outside of the City of Hidalgo's jurisdiction. Second, Munoz explained that even within its own jurisdiction, the ordinance was an invalid regulation of transportation business under Texas caselaw. Munoz made clear that he did not object to legitimate and necessary traffic safety regulations undertaken within the City of Hidalgo's police powers, but explained that the local office requirement was not a legitimate exercise of such powers. Munoz's letter comprised four pages with citations to Texas authority.

43.     On February 23, 2015, the City of Hidalgo, through attorney Ricardo Perez, replied in writing, simply stating that the City did intend to enforce the ordinance "as enacted," and stated (citing no authority) that "the City of McAllen must comply with the Ordinances and rules of the City of Hidalgo." The letter made no attempt to provide any legal authority or distinguish the cases cited in Munoz's letter.

44.     Despite the City's puffery at that time, it did not immediately try to enforce the local office requirement.

45.     Instead, Munoz received a phone call from the Hidalgo Police Chief Espinoza, who stated that Munoz must pay the increased annual and per-vehicle fees by the end of the date of that phone call, or he could no longer operate from the island.

46.     Munoz's attorney immediately sought clarification from the City of Hidalgo attorney, as to whether the City was truly intending to interpret the new fee language such that it would require Munoz to pay the difference in the increased fee, even though his permit for the year 2015 had been issued before the ordinance came into effect. Ricardo Perez replied by email to state that the police chief would not "fine [Munoz] at this point until we figure things out."

**Sudden and selective enforcement of amended ordinance 114-59 against Plaintiffs**

47.     Franz's buses operated alongside S to N Transport's buses from the island every day since enactment of the ordinance, including the morning of March 18, 2015.

48.     On the morning of March 18, 2015, an employee of Franz named Roberto appeared at the island and announced to one or more of STS! and S to N Transport drivers gathered there that "[expletive] is about to happen," or words to that effect. The drivers understood Roberto to mean that enforcement of the amended ordinance would commence.

49.     Other than this statement made by Franz's own employee at the island, Plaintiffs received no notice from any City of Hidalgo official that enforcement of the ordinance was imminent.

9

50. Every driver employed by Franz immediately left the island and parked their buses at STS!'s office some distance down South Bridge Street. Drivers employed by S to N Transport remained at the island loading passengers.

51. Within approximately twenty minutes after the warning by Franz's employee Roberto, several officers of the Hidalgo Police Department appeared and parked their vehicles immediately across South Bridge Street from the island's exit.

52. When the next S to N Transport bus was loaded to capacity and exited the island, the Hidalgo PD officers pulled it over, and issued a citation to the driver, premised on a violation of the amended ordinance.

53. Hidalgo PD officers continued to issue citations to S to N Transport's drivers each time a driver exited the island loaded with passengers. The citations all claim a violation of section 114-59(1) of the amendment, the local office requirement.

54. S to N Transport's drivers each received multiple citations on March 18. Some of the plaintiff drivers were warned by the Hidalgo PD officers that they were in danger of losing their personal drivers' licenses due to the multiple citations. The drivers became—and remain—fearful for their employment, supporting their families, and receiving more citations.

55. The events of March 18, 2015 also left Munoz fearful of losing his drivers due to the citations and fear, and fearful of permanently losing market share if he failed to provide reliable service to passengers at the island.

56. As a result, the following day, March 19, 2015, Plaintiff Munoz decided to provide rides without charge from the island. Munoz believed that because the City of Hidalgo's vehicle-for-hire ordinances apply only to vehicles offered for a fee, he should be able to provide free rides to maintain service to his customers without incurring citations for his drivers.

57.     Despite the fact that S to N Transport provided service without charge to any passengers on March 19, 2015, Hidalgo PD still issued citations to plaintiff drivers.

58.     On information and belief, no citations have been issued to any driver employed by Franz.

59.     Munoz brought an action in Hidalgo County District Court on March 19, 2015 to challenge the enforcement of the ordinance.  *See Juan Munoz v. City of Hidalgo, Tex.*, No. C-1190-15-H (Hidalgo Cnty, 389th Dist. Ct.).

60.     Soon thereafter, the City of McAllen began using its own municipal buses to ensure continued service to passengers at the island while S to N Transport was being prevented from operating at the island.  The City of Hidalgo issued multiple citations to drivers of the City of McAllen's buses for violations of the local office requirement.  The City of McAllen intervened in the state district court lawsuit.  Munoz nonsuited his claims after McAllen's intervention, and the district court signed an order dismissing the claims without prejudice.  Cause No. C-1190-15-H remains pending.

61.     Hidalgo Police Department is issuing citations to the drivers despite the fact that there is no penalty provision in the Code that allows citations to be issued to the drivers.

62.     S to N Transport's business was severely damaged by the issuance of these citations to its drivers.  Because of these citations and threatened continued enforcement of the ordinance, S to N Transport was forced to cease operations completely for several periods of time, including from April 1, 2015 – April 6, 2015, a period of nearly a week that encompassed the very busy Easter Weekend during which many Mexican travelers visit family in the United States.

63.     While S to N Transport was prevented from working during this time, Franz's company STS! was in fact allowed to operate and load passengers at the island during this entire weekend, even though STS! was in direct violation of the same ordinance because it was loading passengers at the island.

**Causes of Action**

**First Cause of Action: Substantive Due Process/Commerce Clause**

**The local office requirement exceeds the City of Hidalgo's authority because it is not an exercise of the police power, and even if it were, it is manifestly arbitrary and unreasonable and not sufficiently related to any legitimate municipal purpose.**

64. Plaintiffs re-allege and incorporate each and every allegation above.

65. By requiring (a) a local office (b) within "walking distance" of the Hidalgo-Reynosa International Bridge (c) with all of the designated specifications and by (d) prohibiting loading of passengers at the island, section 114-59 of the City of Hidalgo Code of Ordinances (as amended via Ord. No. 2014-13) severely burdens interstate and foreign commerce under the United States Constitution.

66. Any such burden on interstate and foreign commerce is invalid unless rationally related to a legitimate governmental purpose.

67. The local office requirement is invalid even within the City of Hidalgo because it fails rational basis review.

68. There is no question that Hidalgo's local office requirement is manifestly arbitrary as a traffic regulation, because the purpose was clearly not to direct foot and bus traffic to certain designated spots to increase safety or convenience or prevent impeding traffic. This ordinance in fact will do the opposite. It reduces rider safety because it requires riders to leave the convenient bus stand already operating, cross at least two intersections to reach any potential office space. This foot traffic will increase traffic congestion with riders walking across the street. Moreover, the ordinance leaves it to the company to lease the office at a place of its choosing (so long as within an undefined "walking distance" from the bridge). Clearly Hidalgo's purpose was not to designate safe spots for bus business; it has left it to the company's discretion where to load. The

only purpose of the ordinance is to protect Councilmember Franz's business, which already leased office space near the bridge, at the expense of S to N Transport's business.

### Second Cause of Action: Fourth Amendment and Procedural Due Process

69.  Plaintiffs re-allege and incorporate each and every allegation above.

70.  The issuance of the citations to S to N Transport's drivers violated the constitutional due process rights of the drivers because City of Hidalgo law provides no authority for citing the drivers under the ordinance at issue.

71.  As a result of these illegal citations, each plaintiff driver was subjected to illegal seizures during the traffic stops and lost income due to the reduction in business in which S to N Transport was able to engage.

72.  Also as a result of these illegal citations, Plaintiffs Munoz and S to N Transport suffered lost income due to the interruption of its business.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request:

1. A declaration that amended section 114-59 of the City of Hidalgo Code of Ordinances is invalid and unenforceable as an illegitimate exercise of the police power even within the City of Hidalgo;

2. A declaration that the citations issued to S to N Transport's drivers premised on violations of amended section 114-59 of the City of Hidalgo Code of Ordinances violated the rights of all plaintiffs as described in this complaint;

3. Nominal, compensatory and punitive damages be awarded for these constitutional violations;

4. That Plaintiffs be awarded costs of this action, as well as all reasonable and necessary attorneys' fees pursuant to 42 U.S.C. 1988 and any other relevant authority; and

5. All other relief to which Plaintiffs may be entitled.

Respectfully submitted,

_____

Jerad Wayne Najvar
Texas Bar No. 24068079
NAJVAR LAW FIRM
4151 Southwest Freeway, Suite 625
Houston, TX 77027
281.404.4696 phone
281.582.4138 fax
jerad@najvarlaw.com
*Attorney-in-Charge for Plaintiffs*